[No. 24953. Department Two. April 18, 1934.]

HOWARD W. VAN SLYKE, as *Trustee, Respondent*, v.
HOWARD CAMPBELL BUMGARNER et al., *Appellants*.[1]

*Sam R. Sumner* and *Harvey F. Davis,* for appellants.

*Hughes & Hughes,* for respondent.

GERAGHTY, J.—Appellants were living on an orchard tract in the Manson district, Chelan county. In December, 1932, their home, with its contents, was destroyed by fire. The property was insured in the Fireman's Fund Insurance Company, of San Francisco. The fire loss was later adjusted at $8,898.11.

Respondent held an overdue note of appellants for

[1]Reported in 31 P. (2d) 1014.

two thousand dollars, and, after the fire, pressed them for payment. Their home had been encumbered by a mortgage for three thousand dollars, and this sum, with some outstanding taxes, was a first charge upon the proceeds of the insurance policy. They were heavily indebted to other creditors.

Before appellants had completed the adjustment of their fire loss, respondent brought suit for the collection of his note in the superior court of Chelan county, and garnished the insurance company. Thereafter, appellants and respondent reached an agreement, and appellants signed and delivered to the respondent an assignment, directed to the insurance company, authorizing payment to him of $2,360.18, being the amount of the note, with interest, expenses incurred, and an attorney fee of one hundred dollars. The assignment follows:

"To: The Firemans Fund Insurance Company, a corporation, of San Francisco, Calif.

"For a valuable consideration, we, the undersigned, hereby assign, transfer and set over to Howard W. Van Slyke, as trustee for June B. Van Slyke, a minor, the sum of $2360.81 to be paid to him out of funds owing to us by you on account of fire recently near Manson, Chelan county, Washington.

"You are hereby directed to pay said sum to him and charge the same to our account.

"Dated this 22nd day of December, A. D. 1932.

"H. C. BUMGARNER
"SYLVIA BUMGARNER"

Appellants contended that the assignment was given on the express understanding that respondent would dismiss the pending suit and garnishment. Respondent denied this, and claimed the assignment was taken as a means of making collection in due course, and that the suit was not to be dismissed until the money was received. At any rate, the suit was not dismissed,

and on the 27th day of December, 1932, appellants caused one of their attorneys to wire the insurance company not to pay the respondent.

At this time, other creditors of appellants instituted suits for collection and garnishment proceedings, and appellants, being unable to make any adjustment with them, on the 4th day of February, 1933, filed a petition in bankruptcy. In their petition, the appellants claimed as exempt, and asked to have set aside to them, such portion of the money received under the insurance policy as would represent their homestead and exemption rights in the home and personal property destroyed. This claim for exemption was made pursuant to the terms of Rem. Rev. Stat., § 568, providing that, wherever property exempt from execution or attachment is insured and destroyed by fire, the insurance money coming to the insured to an amount equal to the exempt property destroyed shall be exempt from execution and attachment.

The referee in bankruptcy thereafter allowed appellants as exempt $3,866.92, to cover the value of the homestead and household effects and personal property. Exceptions were taken by creditors to some items in the referee's allowance, and an appeal taken to the United States district court, where the matter was pending when the present suit was instituted.

At the first meeting of creditors held by the referee in bankruptcy, respondent was present and filed his note as an unsecured claim, and participated with other unsecured creditors in the election of a trustee. It appears from the record that later, upon the ground that he had acted under a misapprehension of his rights, he withdrew his claim. Upon the election of the trustee, a stipulation was had between respondent and other creditors that the money due from the insurance com-

pany should be paid to the trustee without prejudice to the rights of any claimants thereto, and the fund has been paid to him.

This action was thereafter brought by respondent to enforce his right to payment out of whatever money should be set aside to appellants as exempt, and to require the trustee to pay the same. The trial court adjudged respondent to have a first and prior lien upon any exempt money belonging to appellants in the hands of the trustee, to the extent of the debt due him.

Title to the property of a bankrupt exempted by state laws remains in the bankrupt, and does not pass to the trustee; and controversies involving claims upon exempt property must be adjudicated in the state courts. *Lockwood v. Exchange Bank,* 190 U. S. 294, 23 S. Ct. 751. The respondent's position is that appellants' assignment did not, in law, vest in him the legal title to any specific portion of the fund due the appellants from the insurance company, but created an equitable lien upon the whole, and that he is therefore entitled to payment out of any part of the fund set aside to appellants as exempt in the bankruptcy proceeding. He supports this position by the citation of numerous authorities.

We cannot agree with respondent's position, and do not think the authorities cited, general in their application, support his position, under the particular circumstances of this case. Exemption laws are humane in their purpose, and are to be liberally construed in favor of debtors. As said by the supreme court of New York, in *Bliss v. Raynor,* 91 Hun 250:

"The pretense for the payment of the money to the receiver is that the judgment debtor once expressed his willingness to have it so applied.

"A sufficient answer to that position is that the ap-

pellant has repented and now claims his legal rights, and no one has been or will be injured by the change.

"The exemption from seizure and sale of certain property of a householder is a humane provision in favor of families, and it is the duty of the courts to enforce its execution.

"The family of the judgment debtor is entitled to the protection and benefit of this benign statute, and these orders defeat that intention."

The assignment made by appellants cannot fairly be construed as the pledging of the whole fund to secure payment of respondent's claim. Neither would it be a waiver of their right to claim an exemption, if the right could be waived. The assignment was made before the bankruptcy proceedings, and when appellants had due them from the insurance company something over $8,800. The bankruptcy proceedings had not then been instituted, and appellants' claim to exemption had not been made. We have not here a case where, after the exemption claim has been made and exempt property set apart and identified, an assignment or charge against it is made.

The assignment taken by respondent, in so far as the rights of the other creditors were concerned, was an illegal preference, and if no act of the appellants had intervened to stop payment, and the insurance company had paid the money to respondent, he would have been required to turn it over to the trustee, and appellants would still have their right to their exemption. He cannot have a greater right, under the circumstances as they later developed, than he would have had if his claim had been paid by the insurance company.

It is evident that respondent was seeking a preference, and was not willing to dismiss his suit and garnishment until the money had actually come into his

hands. He was induced to do nothing to his prejudice by reason of the assignment. While we do not think he was estopped by filing his claim as a general unsecured creditor from thereafter changing his mind, the fact that he did so prove his claim indicates his own view of the transaction at the time.

Some suggestion is made in respondent's brief that appellants destroyed the possibility of his receiving payment under the assignment by the filing of appellants' petition in bankruptcy. They had a right to file the petition. Like the exemption laws, the bankruptcy law, while perhaps often abused, is beneficent in its purpose, and when debtors are driven to the wall, it cannot be imputed to them as a wrong that they resort to this means for relief and the opportunity to make a new start in life. Respondent was a banker of long experience, knew the financial condition of the appellants, and must at the time have appreciated their desperate plight and the possibility of bankruptcy.

Respondent comes into court seeking equitable relief. A court will be slow to grant this relief at the expense of rights secured to appellants by the exemption laws of this state.

We are of the opinion that the judgment of the trial court must be reversed, and it is so ordered.

BEALS, C. J., BLAKE, TOLMAN, and HOLCOMB, JJ., concur.